IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2016 MAR 28  P 2: 14
CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

ALEXIA BURNO-WHALEN,

    Plaintiff,

v.

    Case No.: GJH-15-564

STATE OF MARYLAND, et al.,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Alexia Burno-Whalen brought this action against Trooper First Class Oliver Okafor, Trooper First Class Robert Hobbs, and the State of Maryland, alleging common law tort claims of battery and false arrest and constitutional claims of excessive force, pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment, and arrest without probable cause, pursuant to 42 U.S.C. § 1983 and the Fourth Amendment. *See* ECF No. 16. Now pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment of Plaintiff's Amended Complaint and Burno-Whalen's Motion for Leave to File a Surreply. ECF Nos. 17, 25. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the Court grants Burno-Whalen's Motion for Leave to File a Surreply and denies Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

1

I.   **BACKGROUND**[1]

On February 26, 2012, Burno-Whalen left work and began driving on Route 5 headed toward her sister's house. ECF No. 16 ¶ 8. As she drove onto the exit ramp toward Route 495, another vehicle drove up next to her on the right shoulder and struck the front passenger's side of her vehicle. *Id.* Both drivers pulled over to the side of the road, and the other driver called the police. *Id.* Burno-Whalen remained in her car to wait for the police to arrive. *Id.* Officer Okafor arrived on the scene and spoke to the other driver first. *Id.* ¶ 9. Okafor then asked Burno-Whalen to step out of her vehicle to do a breathalyzer test. *Id.* After Burno-Whalen attempted the test several times, Okafor became angry and yelled at her to blow harder. *Id.* Following additional attempts, Okafor arrested Burno-Whalen and put her in handcuffs without performing any field sobriety tests or asking for her version of how the accident occurred. *Id.* Okafor then placed Burno-Whalen in the passenger side of his patrol car and began driving toward the College Park Police Barracks. *Id.*

Once in the patrol car, Burno-Whalen began screaming, rocking back and forth, and kicking her feet because "she did not know why Officer Okafor was taking her to College Park." *Id.* She spat on the floor "because her nose and mouth were filled with mucus." *Id.* Okafor then began grabbing at her. *Id.* Once at the police barracks, Okafor grabbed Burno-Whalen, pulled her out of the patrol car, and then struck her in the mouth with a metal baton while her hands were still handcuffed behind her back. *Id.* Blood began "gushing" from her nose and mouth and she could feel that her upper and lower front teeth were broken. *Id.* She repeatedly screamed, "You knocked all my teeth out of my mouth," and spat out blood and broken teeth. *Id.* Okafor drove her to the hospital emergency room, and, after she was treated, drove her back to the police

---

[1] The parties in this case allege vastly different versions of the facts, but for the purposes of this motion, the facts must be viewed in the light most favorable to Burno-Whalen, the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

2

barracks. *Id.* ¶ 10.

Upon returning to College Park, Burno-Whalen and Okafor were met by Officer Hobbs and another officer. *Id.* Hobbs placed Burno-Whalen in the back seat of his patrol car, lying face-up, and "'hogtied' [her] by tying a rope around her legs and pulling and wedging the rope between the door of the patrol car and the door jamb of the patrol car." *Id.* Despite the fact that she was not resisting arrest or trying to escape, she was kept "hogtied" in the same position for forty minutes while Hobbs drove her to the jail in Upper Marlboro. *Id.*

In addition to submitting declarations suggesting a very different version of the facts,[2] the Defendants submitted video footage from a dashboard camera inside of Okafor's patrol car. *See* ECF No. 17, Ex. C. The video includes footage from the time when Okafor was directed, via radio, to report to the scene of Burno-Whalen's automobile accident, to when Okafor and Burno-Whalen arrived at the College Park Police Barracks. In addition, there are several additional minutes of footage when Burno-Whalen, Okafor, and other officers can be heard speaking just outside of Okafor's patrol car.

The video confirms certain allegations made by each party, but is of limited value because Burno-Whalen is not visible at the moment she suffered her alleged injury. The video clearly shows Burno-Whalen kicking, screaming, rocking back and forth, and becoming free of her seatbelt in the patrol car, allowing her to move around. ECF No. 17, Ex. C. The video also shows Burno-Whalen spitting, though her spitting appears to be directed at the floor, and at one point Okafor offers her a cup in which to spit. *Id.* When they arrive at the barracks, Okafor can

---

[2] For instance, in his Declaration, Okafor states, in relevant part, that Burno-Whalen performed field sobriety tests, which demonstrated psycho-physical impairment, and her Preliminary Breath test resulted in a ".16 BAC." ECF No. 17-2 ¶ 8. In addition, he alleges that he did not hit Burno-Whalen in the mouth with a baton, but that she was injured while acting erratically and trying to free herself of Okafor's grip as he helped her out of the patrol car, causing her to fall and hit her mouth on the ground. *Id.* ¶ 11. Okafor also states that he did not accompany Burno-Whalen to the hospital, but rather left her in the custody of other troopers and went to the hospital separately to be checked for contamination after Burno-Whalen allegedly spit blood on his face and in his mouth. *Id.* ¶¶ 12–13.

3

be seen pulling Burno-Whalen from the vehicle with both hands. *Id.* No baton is visible at that time. *Id.* at 09:17:53.[3] Seconds later, Burno-Whalen can be heard repeatedly screaming, "You knocked my teeth out." *Id.* at 09:18:01. Burno-Whalen is not visible at this point and, as a result, the video does not show how she sustained her injury. A little over three minutes later, Okafor can be heard saying, "she just spat her blood in my face." *Id.* at 09:21:02. At that time another officer asks Okafor whether he got blood in his mouth, and he says, "I think so." *Id.* at 09:21:24. After a couple of minutes, an officer asks Okafor for his account of events. *Id.* at 09:23:31. The officer asks Okafor how Burno-Whalen's hair came out and whether her teeth were actually busted out. *Id.* at 09:25:11. As the video progresses, Burno-Whalen can be heard cursing and insulting the officers. *Id.* at 09:26:44. In addition, officers can be heard telling Burno-Whalen to stop moving her head and neck. *Id.* at 09:27:25. Burno-Whalen also repeatedly says, "they're pushing me on the ground," and "get off my neck." *Id.* at 09:28:21.

Burno-Whalen filed her Amended Complaint on June 4, 2015.[4] Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

## II. DISCUSSION

### A. Motion for Leave to File Surreply

Pursuant to Local Rule 105.2.a, surreply memoranda are not permitted to be filed unless otherwise ordered by the Court. "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply."

---

[3] The pin cites for the video refer to time stamps embedded on the top-right corner of the video.

[4] Burno-Whalen properly provided notice to the State of her claim under the Maryland Tort Claims Act by delivering a claim letter in accordance with Maryland Code Ann., Cts. & Jud. Proc. §§ 12-106, 12-107, to Nancy K. Kopp, Treasurer for the State of Maryland, on February 13, 2013. ECF No. 16 ¶ 20. Likewise, Burno-Whalen properly filed her action within three years of the alleged tortious acts on February 2, 2015, in the Circuit Court for Prince George's County. ECF No. 1 at 1; *see* Md. Code Ann., State Gov't § 12-106(b); *Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091 (2007) (finding that the relevant statute of limitations for claims brought under 42 U.S.C. § 1983 "is that which the State provides for personal-injury torts"). The action was removed to this Court on February 27, 2015. *Id.*

*Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citing *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 62 (D.D.C. 2001)).

Burno-Whalen argues that she should be granted leave to file a surreply because Defendants raised certain arguments for the first time in their Reply. The Court agrees that some new arguments were raised in Defendants' Reply. Additionally, Burno-Whalen's Motion for Leave to File a Surreply is unopposed. Accordingly, the Court grants Burno-Whalen leave to file her Surreply, and will consider the arguments made therein.

### B. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

#### 1. Standard of Review

Defendants have styled their motion as a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), or in the alternative, a motion for summary judgment under Rule 56. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *McCray v. Md. DOT.*, No. ELH-11-3732, 2013 U.S. Dist. LEXIS 8513, at *15 (D. Md. Jan. 16, 2013); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as a one for summary judgment under Rule 56."). Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion. *Id.* at *16. Typically, all parties must then be given the opportunity to present all material pertinent to the motion, Fed. R. Civ. P. 12(d), but when the moving party captions its motion "in the alternative" and presents evidence outside the pleadings for the court's consideration, the parties are deemed to have notice that the court may treat the motion as one for summary judgment under the parameters of Rule 12(d). *McCray*, 2013 U.S. Dist. LEXIS 8513, at *17.

In the instant case, Defendants' motion relies heavily on video footage from a dashboard camera in Okafor's car. Burno-Whalen likewise references the video in her responsive motions, and had full opportunity to respond to this evidence. Thus, it appears that both parties agree the video is helpful to the Court's resolution of this motion and neither side has requested additional discovery in this regard. *See McCray*, 2013 U.S. Dist. LEXIS 8513, at *16 ("In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary.") (citation omitted). Accordingly, conversion of the motion to a motion for summary judgment under Rule 56 is appropriate.

Summary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50, 106 S. Ct. 2505 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the non-moving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322–24.

### 2. Common Law Tort Claims (Counts I and II)

Burno-Whalen alleges common law tort claims for battery (Count I) and false arrest (Count II) against the individual officers and the State in its capacity as respondeat superior.[5] The State seeks dismissal of the counts asserted against the State based on sovereign immunity. When a state chooses to waives its sovereign immunity by legislative action, courts strictly construe the

---

[5] The doctrine of respondeat superior is "a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time." *S. Mgmt. Corp. v. Taha*, 836 A.2d 627, 638 (Md. 2003).

waiver in favor of the state. *See Proctor v. Wash. Area Transit Auth.*, 990 A.2d 1048, 1058 (Md. 2010) (citing *Bd. of Educ. of Balt. Cty. v. Zimmer-Rubert*, 973 A.2d 233, 239–40 (Md. 2009)). The Maryland Tort Claims Act ("MTCA") provides a limited waiver of sovereign immunity for tort actions against the State. Md. Code Ann., State Gov't § 12-104. Among the exceptions to the State's waiver are claims involving "[a]ny tortious act or omission of State personnel that: (i) is not within the scope of the public duties of the State personnel; or (ii) is made with malice or gross negligence." Md. Code Ann., Cts & Jud. Proc. § 5-22(a)(4)(i–ii). Thus, if a claim requires a finding that the officers acted with either malice or gross negligence, claims based on respondeat superior cannot survive. *See Cleary v. Green*, No. CCB-07-1202, 2007 U.S. Dist. LEXIS 95751, at *10 n.2 (D. Md. Nov. 15, 2007).

Turning to Burno-Whalen's tort claims, under Maryland law, battery is defined as the "unpermitted application of trauma by one person upon the body of another person." *McQuiggan v. Boy Scouts of Am.*, 536 A.2d 137, 141 (Md. 1988). Battery requires an intent by the actor "'to bring about a harmful or offensive contact . . . . [It is] confined to intentional invasions of the interests in freedom from harmful or offensive contact'" rather than accidental or inadvertent contact. *Janelsins v. Button*, 648 A.2d 1039, 1042 (Md. Ct. Spec. App. 1994) (citation omitted). In a claim for battery, the element of intent "'requires not a specific desire to bring about a certain result, but rather a general intent to unlawfully invade another's physical well-being.'" *Beall v. Holloway-Johnson*, 2016 Md. LEXIS, at *20 (Md. Jan. 21, 2016) (quoting *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999)). Furthermore, "'intent is a subjective element usually left for the jury's determination.'" *Id.* While battery requires intent, "the presence of an intent to do an act does not preclude negligence. [Thus, the] concepts of negligence and battery are not mutually exclusive." *Ghassemieh v. Schafer*, 447 A.2d 84, 89 (Md. Ct. Spec. App. 1982) (citation

7

omitted). Moreover, Burno-Whalen's claim of battery is "analytically dependent" on her claim for false arrest, since the force used to effectuate a lawful arrest would not be inherently tortious. *Ashton v. Brown*, 660 A.2d 447, 471 n.24 (Md. 1995) ("If the plaintiff['s] arrest[] constituted a false imprisonment, then the physical force used in effectuating the arrest[] would give rise to a cause of action for assault or battery. Conversely, if the arrest[] [itself was] not tortious, neither was the physical force used to effectuate [it].").

Defendants argue that Okafor acted with legal justification in arresting Burno-Whalen since he had reason to believe she was intoxicated, and since Maryland law permits an officer to arrest a person based on the reasonable suspicion that the person has been driving under the influence of alcohol. *See* Md. Code Ann., Transp. § 16-205.1(b)(2). Defendants assert that Burno-Whalen did not know she had been involved in an automobile accident, and was "oblivious to the presence of TFC Okafor." ECF No. 17-1 at 14. In addition, Defendants allege that Burno-Whalen admitted to drinking "a lot" of champagne, and presented with a strong smell of alcohol on her breath, slurred speech, and balance problems. *Id.* In support of their arguments, Defendants cite a written report purporting to show that Okafor conducted field sobriety tests, which Burno-Whalen failed. ECF No. 17-2. Defendants assert that Okafor's written report must be taken as proof that he conducted filed sobriety tests, and argue that Burno-Whalen's contrary affidavit should be rejected as "self-serving." Thus, they contend that there can be no genuine issue of material fact about whether Okafor had probable cause to arrest Burno-Whalen. ECF No. 22 at 2–4.

Burno-Whalen's affidavit alleges a vastly different version of the facts. She denies virtually all of Defendants' allegations regarding the details of her arrest, and contends that Okafor did not conduct any field sobriety tests and that the results of breathalyzer tests were

inconclusive. ECF No. 16 ¶ 9. Burno-Whalen argues that the written report produced by Okafor at most raises a genuine issue of material fact as to whether he conducted field sobriety tests and obtained conclusive results from a breathalyzer. Specifically, she states that "[t]he fact that Officer Okafor has memorialized his version of events in a written report does not make his version of events any more or less credible than that stated by the plaintiff." ECF No. 25 at 2.

Taking the facts in the light most favorable to Burno-Whalen, the Court finds that genuine issues of material fact preclude summary judgment. If Burno-Whalen exhibited no signs of intoxication, cooperated when asked to perform a breathalyzer test with inconclusive results, and was not asked to perform any field sobriety tests, then a reasonable jury could find that Okafor did not have probable cause to arrest Burno-Whalen. Although additional discovery may later, more definitively, refute Burno-Whalen's claims, at this juncture, there remain issues of material fact which preclude summary judgment.

Furthermore, if the jury finds tortious conduct, the jury could reasonably find that Okafor and Hobbs acted with malice, with gross negligence, or with ordinary negligence, based on Burno-Whalen's affidavit and the video evidence presented by the Defendants. Thus, genuine issues of material fact about whether Okafor's and Hobbs's actions fall within the State's limited waiver of sovereign immunity in the MTCA also preclude resolution of the case with respect to the State on Counts I and II.

### 3. Constitutional Claims

#### a. Excessive Force (Count III)

Burno-Whalen alleges claims of excessive force in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment against Defendants Okafor and Hobbs. The Defendants argue that these claims should be dismissed because the Defendants are protected by federal qualified immunity

under 42 U.S.C. § 1983. "Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution." *Whitley v. Prince George's Cty.*, No. GJH-12-03428, 2014 WL 5710058, at *2 (D. Md. Nov. 3, 2014) (citing 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 (1979)).

Qualified immunity is an affirmative defense to section 1983 claims. It protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982). To determine the applicability of qualified immunity, the Court follows a two-step analysis. First, it must determine whether the facts viewed in the light most favorable to the non-moving party establish the deprivation of a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001); *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 1692 (1999). If so, the Court then proceeds to determine whether, at the time of the alleged violation, the constitutional right was "clearly established" and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996) (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1093 (4th Cir. 1992)). "Clearly established," for purposes of qualified immunity, means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson*, 526 U.S. at 614–15. The "answer to both [ ] questions must be in the affirmative in order for a plaintiff to defeat a . . . motion for summary judgment on qualified immunity grounds." *Henry v.*

*Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007) (citing *Batten v. Gomez*, 324 F.3d 288, 293–94 (4th Cir. 2003)) (ellipses in original). Furthermore, disputes of material fact may preclude a finding by the Court about whether qualified immunity applies, and instead convert the inquiry into a question for the trier of fact. *See Shoemaker v. Smith*, 725 A.2d 549, 561 (Md. 1999) (citing *Artis v. Cyphers*, 642 A.2d 298, 308 (Md. 1994)).

Applying this analysis to the present case, the Court must determine whether the facts, viewed in the light most favorable to Burno-Whalen, establish the violation of a constitutional right. Burno-Whalen claims that her Fourteenth Amendment rights were violated when Okafor and Hobbs used excessive force in executing her arrest. The Defendants argue that Okafor's and Hobbs's conduct was reasonable and did not constitute excessive force.

Taking the facts in the light most favorable to Burno-Whalen, there are genuine issues of material fact as to whether the evidence establishes the violation of a constitutional right. Burno-Whalen's primary claim of excessive force against Okafor is that he allegedly hit her in the mouth using a metal baton. However, these alleged actions occurred outside the view of the dashboard camera that was recording video from Okafor's patrol car. The audio that can be heard from outside the car, when Burno-Whalen can be heard saying repeatedly, "you knocked my teeth out," does not clarify whether she was struck in the mouth with a baton as she alleges, or whether she fell and hit her mouth on the ground as a result of her own erratic behavior as the Defendants assert. While there is only a lapse of less than ten seconds between when Okafor's hands are visible and when Burno-Whalen states that her teeth have been knocked out, this is a sufficient lapse to create a genuine issue of material fact as to whether Okafor's actions violated Burno-Whalen's Fourteenth Amendment rights. Because a reasonable jury could reach either conclusion, the question of whether qualified immunity applies to Okafor becomes one for the

trier of fact. *See Shoemaker*, 725 A.2d at 561. Thus, summary judgment is precluded on Burno-Whalen's claim of excessive force against Okafor.

Similarly, Burno-Whalen argues that Hobbs violated her Fourteenth Amendment right to be free from excessive force when he placed her in the back seat of his patrol car, "hogtied" her, and left her in that position for forty minutes while he drove her to the jail in Upper Marlboro. ECF No. 16 ¶ 10. Defendants contend that Hobbs acted reasonably in placing an additional restraint around Burno-Whalen's ankles, based on the fact that she was kicking and screaming in Okafor's patrol car earlier that day, and had continued to be aggressive toward officers throughout the day. ECF No. 17-1 at 7. Furthermore, they assert that Hobbs did not transport Burno-Whalen, and did not see her again after other officers transported her to Upper Marlboro. *Id.* As above, genuine issues of material fact preclude a finding of whether Hobbs's actions violated Burno-Whalen's Fourteenth Amendment rights. Thus, the inquiry of whether qualified immunity applies becomes one for the trier of fact, and summary judgment is inappropriate.

### b. Arrest Without Probable Cause (Count IV)

A similar analysis applies to Burno-Whalen's claim that Okafor arrested her without probable cause pursuant to 42 U.S.C. § 1983 and the Fourth Amendment. An officer has probable cause for an arrest "when the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wilson v. Kittoe*, 337 F.3d 392, 398 (4th Cir. 2003) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). Burno-Whalen was arrested for driving under the influence of alcohol. ECF No. 17 at 4. Maryland law provides that a person may not "drive or attempt to drive any vehicle while under the influence of alcohol," or "drive or attempt to drive any vehicle

12

while the person is under the influence of alcohol per se." Md. Code Ann., Transp. § 21-902(a)(1)–(2). Being "under the influence of alcohol per se" is defined as "having an alcohol concentration at the time of testing of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters or breath." Md. Code Ann., Transp. § 11-1741.1(a). Maryland courts have found that signs of intoxication, such as the odor of alcohol emanating from the person of a motorist and failing to drive within a single lane, create at least, "reasonable grounds" to request that a motorist take an alcohol content test or perform field sobriety tests. *See Motor Vehicle Admin. v. Spies*, 82 A.3d 179 (Md. 2013); *Blasi v. Maryland*, 893 A.2d 1152 (Md. Ct. Spec. App. 2006).

Burno-Whalen denies that she exhibited any signs of alcohol intoxication. ECF No. 16 at 3. Further, she contends that she did not cause a motor vehicle accident, but that another vehicle collided into her vehicle while passing her on the shoulder of an exit ramp. *Id.* Burno-Whalen maintains that she did not know why Okafor took her into custody. *Id.* In response, Defendants argue that Burno-Whalen's Fourth Amendment claim fails because Okafor had "[a]n [a]bundance" of probable cause to arrest her. The written report produced by Okafor purporting to show the results from field sobriety tests and a breathalyzer test stands in direct contrast to Burno-Whalen's allegations that no field sobriety tests were performed. Thus, there is a genuine issue of material fact about whether Okafor had probable cause to arrest Burno-Whalen, and summary judgment is precluded.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to File a Surreply, ECF No. 25, is GRANTED, and Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary

Judgment of Plaintiff's Amended Complaint, ECF No. 17, is DENIED. A separate Order shall issue.

Dated: March 28, 2016

GEORGE J. HAZEL
United States District Judge