IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| BURNO-WHALEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: GLS-15-564 |
| | ) | |
| STATE OF MARYLAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before this Court, by the parties' consent, is a Motion to Dismiss, or in the alternative, a Motion for Summary Judgment filed by Defendants, the State of Maryland and Senior Trooper Oliver Okafor and Trooper First Class Robert Hobbs of the Maryland State Police, and the responses thereto. (ECF Nos. 125, 131 and 135). The issues having been fully briefed, the Court finds that no hearing is necessary. Local Rule (L.R.) 105.6. For the reasons set forth more fully below, Defendants' motion is DENIED.

**I.  Factual Background**

An exhaustive factual background is set forth in the Court's memorandum opinion from the first consideration of Defendants' motion to dismiss, or alternatively, a motion for summary judgment.[1] (ECF No. 30 at pp. 2-4). At this juncture, the facts alleged by the parties remain relatively the same.

---

[1] The parties in the instant case continue to allege different versions of the facts. For the purposes of this Court's consideration of Defendants' motion, the facts must be viewed in the light most favorable to Plaintiff, the non-moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Thus, the Court relies on the facts as set forth in Plaintiff's Amended Complaint, Deposition and Opposition to Defendants' motion (ECF Nos. 16, 125,131) unless otherwise stated.

According to Alexis Burno-Whalen ("Plaintiff), on the morning of February 26, 2012, she ended her work shift and proceeded to drive along Route 5 in Prince George's County toward her sister's residence. (ECF No. 16, ¶¶ 7-8). As Plaintiff drove onto an exit ramp toward Route 495, another vehicle drove up next to her vehicle and struck the front passenger side. ECF Nos. 16, ¶ 8; 131-2, Exh. B, "Burno-Whalen Depo.", pp. 30-31.[2] Both drivers then proceeded to pull over to the side of the road. (ECF No. 16, ¶ 8). At that time, the driver of the other vehicle called for police assistance while Plaintiff remained in her vehicle. (ECF Nos. 16, ¶ 8; 125-3, p. 33). Maryland State Trooper Oliver Okafor ("Okafor") responded to the call, and first spoke with the other driver upon arriving at the scene. (ECF Nos. 16, ¶ 9; 125-3, p. 34). Okafor then approached Plaintiff's vehicle, asked her to step out of her vehicle, and proceeded to administer a breathalyzer test. (ECF Nos. 16, ¶ 9; 131-2, p. 39). While Plaintiff attempted to perform the breathalyzer test, Okafor became angry and yelled at her, demanding that she blow harder. ECF Nos. 16, ¶ 9; 131-2, p. 45. After Plaintiff's additional attempts failed, Okafor informed Plaintiff that she was under arrest and placed her in handcuffs without performing any field sobriety tests or making further inquiry about how the accident occurred. (ECF Nos. 16, ¶ 9; 131-2, p.44). Plaintiff was placed in the passenger seat of Okafor's patrol vehicle to be driven to the College Park Police Barracks ("Police Barracks"). (*Id*.)

Unaware of "why . . . Okafor was taking her to College Park," Plaintiff started "screaming," "rocking back and forth," and "kicking her feet." (*Id*.) Okafor then began grabbing Plaintiff. (*Id*.) At this time, Plaintiff's "nose and mouth were filled with mucus," and she began spitting on the floor of the patrol car. (*Id*.); *see also*, Exh. F, Dashcam Video.[3] Upon arriving at

---

[2] Plaintiff and Defendants have each appended portions of Plaintiff's deposition transcript to their briefs, *see* ECF Nos. 125-3; 131-2.
[3] While video shows some key aspects of their interaction that day, it does not show what happened to Plaintiff at the time that she suffered her injury.

2

the Police Barracks, Okafor grabbed Plaintiff, pulled her out of the patrol car, and struck her in the mouth with his metal baton, as her hands were handcuffed behind her back. (ECF Nos. 16, ¶ 9; 131-2, pp. 54-55). Plaintiff could feel her upper and lower teeth were broken while blood began "gushing" from her nose and mouth. (*Id.*) In response, Plaintiff screamed several times: "You knocked all my teeth out of my mouth." (*Id.*); *see also*, Exh. F, Dashcam Video. Okafor then drove Plaintiff to a hospital Emergency Room. (ECF Nos. 16, ¶ 10; 131-2, p. 66). After she was treated, Okafor drove Plaintiff back to the Police Barracks, where Trooper First Class Hobbs ("Hobbs") and an additional unidentified Trooper met them. (ECF Nos. 16, ¶ 10; 131-2, p. 68). While Plaintiff was still handcuffed, Hobbs placed Plaintiff in the backseat of his patrol car, lying face up and "'hogtied' [her] by tying a rope around her legs and pulling and wedging the rope between the door of the patrol car and the door jamb of the patrol car." (ECF Nos. 16, ¶ 10; 131-2, p. 71). During this time, Plaintiff was not resisting arrest or trying to escape, but remained in a "hogtied" position for approximately forty minutes while being transported to a jail in Upper Marlboro.[4] (*Id.*)

## II. Procedural History

On February 27, 2015, the case was removed to this Court. (ECF No. 1). A series of procedural events preceded the June 4, 2015 filing of Plaintiff's Amended Complaint. (ECF No. 16). Plaintiff's Amended Complaint asserts four counts: two tort claims arising under State law,

---

[4] Okafor's version of the facts is dramatically different. For instance, he says that Plaintiff performed field sobriety tests, which established that she was impaired, and the results of her preliminary breath test revealed a ".16 BAC." (ECF No. 125-5, p. 2, Exh. C, "Okafor Declaration"). In addition, Okafor denies striking Plaintiff in the mouth with a baton. Instead, he claims that she injured herself while trying to free herself from his grip as he removed her from the patrol car, i.e., she fell and hit her mouth on the ground. *Id.* at 3. Furthermore, Okafor denies transporting Plaintiff to the hospital; he said that he went separately to the hospital to be checked for contamination after Plaintiff allegedly spit blood in his mouth. *Id.*

Neither party disputes that later on February 26, 2012, Plaintiff was charged with "driving under the influence, driving while intoxicated, improper lane changes, reckless driving, malicious destruction of property, assault and other charges." (ECF No. 16, ¶ 11). Those charges have since been dismissed. (*Id.*) The parties do not dispute this fact.

and two constitutional claims pursuant to 42 U.S.C. § 1983. (*Id.*) On June 18, 2015, Defendants filed an amended motion to dismiss, or in the alternative, motion for summary judgment pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) and 56. (ECF No. 17). Plaintiff's Opposition thereto was filed on June 21, 2015. (ECF No. 19). In a Memorandum Opinion and Order, the Honorable George J. Hazel denied Defendants' motion. (ECF Nos. 30 and 31).

With the parties' consent, the instant case was transferred to the undersigned for all further proceedings. (ECF No. 79). Following the close of discovery, the Defendants filed a Motion to Dismiss/Motion for Summary Judgment (the "Motion"). (ECF Nos. 94, 104, and 108). After referring the parties to mediation, the undersigned terminated the motions without prejudice, giving the parties the opportunity to re-file in the event mediation was unsuccessful. (ECF No.120). Because mediation was unsuccessful, the parties refiled their motions. (ECF Nos. 125, 131, and 135). Defendants' motion is ripe for disposition.

### III. Standard of Review

A court can grant summary judgment only when, construing the evidence as a whole and in the light most favorable to the non-moving party, no genuine issue of material fact exists such that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

After a moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverly*, 404 F.3d 243, 246–47 (4th Cir. 2005) (citing *Pine*

*Ridge Coal Co. v. Local 8377, UMW*, 187 F.3d 415, 422 (4th Cir. 1999)). The burden can be satisfied through the submission of discovery materials. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

In considering a motion for summary judgment, a court's role is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249. A court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motion. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 495, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A court "may not 'weigh the evidence or make credibility determinations,' and is not in the position 'to disregard stories that seem hard to believe.'" *Harris v. Pittman*, 927 F.3d 266, 272 (4th Cir. 2019) (quoting *Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991)) (internal citations omitted).

## IV. Analysis

### A. Common Law Tort Claims: Battery and False Arrest (Counts I and II)

Plaintiff alleges common law tort claims for battery (Count I) and false arrest (Count II) against Okafor and Hobbs in their official capacity as Maryland State Troopers, and also against the State of Maryland through the doctrine of respondeat superior, as their employer.[5] (ECF No. 16).

---

[5] Under the doctrine of respondeat superior "'an employer is ordinarily responsible for the tortious conduct of his employee committed while the servant was acting within the scope of the employment relationship.'" *Barclay v. Briscoe*, 427 Md. 270, 47 A.3d 560, 567 (Md. 2012) (quoting *Embrey v. Holly*, 293 Md. 128, 442 A.2d 966, 969 (1982)). For the doctrine to apply, an employee's tortious actions must be considered within the scope of employment, i.e., "the acts must have been in furtherance of the employer's business and authorized by the employer." *Barclay*, 427 Md. at 282, 47 A.3d at 567.

Defendants seek dismissal of both counts, claiming that the doctrine of state sovereign immunity applies. (ECF No. 125-1, pp. 21-23)

Pursuant to Maryland law, state personnel are "immune from . . . liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence[.]" Md. Code Ann., Cts. & Jud. Proc. § 5-522(b); State Gov't § 12-105. As it pertains to the State, the Maryland Tort Claims Act ("MCTA") provides a limited waiver of the State's sovereign immunity from tort actions against it. Md. Code. Ann., State Gov't § 12-104. The State does not waive its sovereign immunity for "[a]ny tortious act or omission of State personnel that: (i) is not within the scope of the public duties of the State personnel; or (ii) is made with malice or gross negligence."[6] Md. Code Ann., Cts. & Jud. Proc. § 5-522(a)(4)(i)-(ii).

   1. *Count 1 - Battery*

Regarding Count 1, battery is defined as the "unpermitted application of trauma by one person upon the body of another person." *McQuiggan v. Boy Scouts of America*, 73 Md. App. 705, 536 A.2d 137, 141 (Md. Ct. Spec. App. 1990). The tort of battery is said to occur "when one intends a harmful or offensive contact with another without that person's consent." *Hendrix v. Burns*, 205 Md. App. 1, 43 A.3d 415, 426 (Md. Ct. Spec. App. 2012); *see also Saba v. Darling*, 320 Md. 45, 572 A.2d 1240, 1242 (Md. 1990). "Intent" only requires that the person "unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of such a contact," rather than through "innocent conduct that is accidental or inadvertently results in

---

[6] Because Maryland law immunizes the State from suit in the event a jury were to find Defendants Okafor and/or Hobbs acted with malice or gross negligence, Plaintiff's claim seeking to hold the State of Maryland liable through respondeat superior would fail. *See Cleary v. Green*, No. CCB-07-1202, 2007 WL 4707635, at *3 n.2 (D.Md. Nov. 15, 2007) (explaining that Maryland has not waived immunity for "any tortious act or omission of state personnel that is committed with gross negligence or malice.").

a harmful or offensive contact." *Nelson v. Carroll*, 355 Md. 593, 735 A.2d 1096, 1101-02 (Md. 1999). Furthermore, "intent" is a subjective element that is usually left for the jury to decide. *Nelson,* 735 A.2d at 1101.

Plaintiff alleges that Okafor utilized a metal baton and struck in her in the mouth, whereas Defendant Okafor argues that, in an attempt to resist arrest, Plaintiff freed herself from his grip and fell in the process. (ECF Nos. 131, p. 4; 125-1, p. 12). Although Okafor contends that his actions were legally justified, he also concedes that the parties "disagree about the circumstances surrounding [the cause of Plaintiff's] chipped teeth and bruised mouth." (ECF No. 125-1, p. 12). This concession alone is sufficient to conclude that summary judgment cannot be entered in Defendants' favor because a dispute remains as to who to believe regarding a material fact: Did Okafor cause Plaintiff's injuries or were Plaintiff's injuries self-inflicted.[7] In the instant case, if a jury finds that Defendant Okafor acted in a tortious manner, the jury could also conclude that Defendant Okafor acted with malice or gross negligence toward Plaintiff. Whether Defendant's actions rise to this level is left for the jury to decide because credibility determinations are the province of the jury. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

With respect to Hobbs' use of the violent prisoner restraint device ("VPRD") while transporting Plaintiff, there, too, remain disputed issues of material fact. Defendant Hobbs asserts that Plaintiff continuously resisted all efforts to be restrained and that her actions made her a risk to others, which led him to employ the VPRD. (ECF No. 125-1, p. 11). Plaintiff contends that she did not resist arrest and denies being aggressive or combative. (ECF No. 131, p. 6). Thus, a

---

[7] Although Defendants argue that the time frame between when Plaintiff exits the car and her complaint of being injured are "so swift [that] no reasonable jury could believe a baton could have been used," this is an issue that must be left for the fact-finder to decide. *Dennis*, 290 F.3d at 644-45 (4th Cir. 2002).

question remains as to Plaintiff's conduct. Therefore, the determination of whether the use of the VPRD is tortious conduct, and ultimately done with malice or gross negligence, should be left to the jury.

In sum, there remain issues of material fact as to Count I, which preclude entry of summary judgment.

### 2. Count II – False Arrest[8]

Regarding Count 2, under Maryland law, the elements required for false arrest are: (1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification. *Heron v. Strader*, 361 Md. 258, 264 (2000). Whether legal justification exists, "depends on whether the officer acted with legal authority to arrest." *Stuzman v. Krenik*, 350 F.Supp.3d 366, 380-81 (D.Md. 2018). Where, as here, the arrest is without a warrant, the legal justification required depends on whether the underlying crime is a felony or a misdemeanor. *Id*. If an officer has probable cause to believe that a felony has taken place, then legal justification exists to make a warrantless arrest. *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447, 471-72 (Md. 1995). However, for a misdemeanor offense, a warrantless arrest is "legally justified only to the extent that a misdemeanor was actually committed in a police officer's view or presence." *Id*.; Md. Code Ann., Crim. Proc. § 2-202(a) ("A police officer may arrest without a warrant a person who commits or attempts to commit . . . misdemeanor in the presence or within the view of the police officer."). In the instant case, Maryland's motor vehicle laws apply, which are generally considered to be misdemeanor offenses. *Stutzman,* 350 F.Supp.3d at 381; *see also* Md. Code Ann., Transp. §§ 21-902; 27-101.

---

[8] Maryland courts recognize that the "'elements of false arrest and false imprisonment are identical,'" as each tort requires that "a plaintiff demonstrate that another person deprived him [or her] of [their] liberty without consent and without legal justification." *Beasley v. Kelly*, No. DKC-10-0049, 2011 WL 4711910, at *4-5 (D.Md. Oct. 4, 2011) (quoting *Heron v. Strader*, 361 Md. 258, 761 A.2d 56, 59 (Md. 2000)).

Defendants aver that Plaintiff's "false arrest claim fails because the arrest was supported by probable cause." (ECF No. 125-1, p. 15). Specifically, Okafor reasonably believed that Plaintiff was intoxicated. (*Id.*). Thus, consistent with Maryland law, Okafor arrested her based on probable cause that she had been driving under the influence of alcohol. (*Id.*). Plaintiff counters that because she was not intoxicated and there are no field sobriety test results this Court should deny summary judgment. (ECF No. 131, p. 7).

Maryland's Court of Appeals has explained that, in an action alleging a false arrest or false imprisonment, "probable cause is not a defense . . . based upon a police officer's warrantless arrest for the commission of a non-felony offense." *Ashton*, 660 A.2d at 472; *Queen v. Prince George's Cty.*, 188 F.Supp.3d 535, 542 (D. Md. 2016). Indeed, as it concerns a false arrest claim, the issue is "whether the undisputed facts show that [an officer] had legal justification for depriving [the arrestee] of [his/her] liberty without [his/her] consent," and on summary judgment, the issue is "whether, when viewing the facts in light most favorable to the plaintiff, a fact-finder could infer the plaintiff was *not* committing the charged crime." *Queen*, 188 F.Supp.3d at 542 (quoting *Ross v. Early*, 899 F.Supp.2d 415, 430 (D.Md 2012)) (emphasis added).

Here, there remains a genuine dispute regarding material facts. One issue is whether Plaintiff was under the influence of alcohol. Defendants assert that Plaintiff admitted to drinking prior to the accident, and that Plaintiff had slurred speech and balancing problems. (*See* ECF No. 125-1, p. 15). Plaintiff admits to consuming "about two" mixed alcoholic drinks during her shift, *see* ECF No. 125-3, pp. 26-27, yet denies that she exhibited signs of being under the influence at the time of her arrest. (ECF No. 16, ¶¶ 12-13). In addition, Plaintiff denies that Okafor made her

perform any field sobriety tests. (ECF No. 125-3, p. 12).[9]  Because a dispute exists regarding whose version of events is more credible, a jury must decide this issue. *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015).  Accordingly, summary judgment is denied.

Defendants further contend that they are entitled to statutory immunity because Plaintiff's Amended Complaint lacks any factual basis to support her allegation of malice, which they believe must be specifically plead and "show a level of malice or gross negligence beyond a base allegation of excessive force[.]" (ECF No. 125-1, p. 22).

A complaint, however, "need not expressly assert that the [D]efendants acted with malice or gross negligence if [the complaint] 'alleges facts . . . that could establish actual malice if ultimately supported by the evidence and believed by the fact finder.'" *Ross v. Cecil Cty. Dep't of Soc. Servs.*, 878 F.Supp.2d 606, 623 (D.Md. 2012) (quoting *Muhammad v. Maryland*, No. 11-3761-ELH, 2012 WL 987309, at *2 (D.Md. Mar. 20, 2012).  Indeed, where the facts are well-pleaded "showing ill-will or evil or wrongful motive," is "sufficient to take a claim outside of the immunity and non-liability provisions of the MTCA." *Barbre v. Pope*, 404 Md. 157, 935 A.2d 699, 714 (Md. 2007).  Here, Plaintiff's Amended Complaint alleges that "the actions taken by Officer Okafor and Officer Hobbs were done maliciously, willfully, and wantonly," and she describes in detail the Defendants' actions (*e.g.*, the use of a metal baton and of the VRPD). (ECF No. 16, ¶ 6).  Plaintiff has sufficiently alleged facts from which a jury could find ill-will or malice. Accordingly, summary judgment is denied as to Counts I and II of Plaintiff's Amended Complaint.

---

[9] Okafor's Declaration represents that he tried to get Plaintiff to perform certain field sobriety tests, including a Horizontal Gaze Nystagmus ("HGN") and two balancing tests. (ECF No. 125-5, p. 2).  As stated above, the issue of determining which party is more credible is left for the jury

### B. Plaintiff's Federal Constitutional Claims (Counts III and IV)

#### 1. *Count III - Excessive Force in Violation of the Fourteenth Amendment*

In Count III, Plaintiff seeks to hold Defendants Okafor and Hobbs liable under 42 U.S.C. § 1983 for using excessive force against her while in their custody. (ECF No. 16, ¶¶ 27-28). Defendants Okafor and Hobbs assert that summary judgment should be granted because their "conduct was reasonable," and because they are "entitled to qualified immunity." (ECF No. 125-1, pp. 17-21).

Title 42, Section 1983 prohibits "a person acting under the color of law from depriving another of any rights, privileges or immunities secured by the Constitution and laws." *Madison v. Harford Cnty.*, No. MJG-12-1120, 2013 WL 4008859, at *2 (D.Md. Aug. 2, 2013). However, Section 1983 alone is not a "'source of substantive rights,' but merely provides a 'method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The statute "permits citizens to recover when state or local officials violate rights guaranteed by the federal constitution." *Ashton*, 660 A.2d at 462 (citing *Wyatt v. Cole*, 504 U.S. 158, 161-63 (1992)). For claims brought under Section 1983, the analysis starts by identifying the "specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394.

Here, Plaintiff argues that the Fourteenth Amendment applies because Defendants Okafor and Hobbs actions occurred after she had been arrested and while she was being transported to the Police Barracks. *See Orem v. Rephann*, 523 F.3d 442, 445-46 (4th Cir. 2008), *abrogated on other grounds by Brooks v. Johnson*, 929 F.3d 104 (4th Cir. 2019); *Robles v. Prince George's Cnty., Md.*, 302 F.3d 262, 269 (4th Cir. 2002) ("As a pretrial [arrestee], . . . treatment and the conditions of [one's] restraint are evaluated under the Due Process Clause of the Fourteenth Amendment.").

For a plaintiff to succeed on a claim of excessive force arising under the Fourteenth Amendment's Due Process Clause, "[a pretrial detainee] must show that [a] Defendant [] 'inflicted unnecessary and wanton pain and suffering.'" *Young v. Prince George's Cnty., Md.*, 355 F.3d 751, 758 (4th Cir. 2004) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998)), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *see also Orem*, 523 F.3d at 446.

To determine whether a constitutional line has been crossed, "'a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force used, the extend of the injury inflicted, and whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Orem*, 523 F.3d at 446 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Qualified immunity, however, serves as an affirmative defense to Section 1983 claims. It shields governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). On a motion for summary judgment, a court applies a two-prong approach: (1) whether the facts demonstrate that plaintiff's constitutional right to be free from excessive force was violated; and (2) if so, whether the officer's "conduct was objectively reasonable in light of the then clearly-established constitutional right." *Orem*, 523 F.3d at 446. "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213 (D.Md. 1991). *Accord Anderson v. Creighton* 483 U.S. 635, 641 (1987). The issue of whether qualified immunity is applicable is question left for the jury to decide. *See Shoemaker v. Smith*, 353 Md. 143, 725 A.2d 549, 561-62 (Md. 1999).

In viewing the facts in the light most favorable to Plaintiff, there remain genuine issues of material fact as to whether the evidence establishes a violation of her Fourteenth Amendment right. Plaintiff maintains that Okafor used excessive force by hitting her in the mouth and that Hobbs used excessive force in restraining her. Defendants counter that their conduct was reasonable. (ECF No. 125-1, pp. 17-18). On the videotape, Plaintiff can be heard stating that her teeth were knocked out by Okafor. However, the circumstances giving rise to Plaintiff's claims occur outside of the view of the dashcam. *See* Exh. F, Dashcam Video. Defendant Okafor avers that Plaintiff's injuries are self-inflicted, and argues that "no reasonable jury could believe a baton was used." (ECF No. 125-1, p. 18). In this case, a reasonable jury could infer that Defendant Okafor's actions were not a "good faith effort" to maintain or restore discipline. *See Orem*, 523 F.3d at 446. Conversely, a fact-finder could conclude that Plaintiff injured herself. Ultimately, because there are genuine issues of material fact in dispute the issue of whether qualified immunity exists is best left for the jury. Accordingly, summary judgment based on qualified immunity is not appropriate.

Regarding Hobbs, Plaintiff alleges that his use of the VRPD "hogtie" while transporting her violated her Fourteenth Amendment right to be free from the use of excessive force. (ECF No. 16, ¶¶ 10). Defendant Hobbs contends that his actions were "entirely reasonable given the fact that Plaintiff continuously resisted every action taken by the troopers and was an objective danger to herself [during] transport." (ECF No. 125, p. 18). Here, there also remain material facts in dispute. Ultimately, the questions of whether Plaintiff's constitutional right was violated and whether qualified immunity exists are best left for the fact-finder. Accordingly, summary judgment is denied.

### 2. Count IV - Arrest Without Probable Cause

In Count IV, Plaintiff alleges that, absent probable cause, her arrest violated the Fourth Amendment of the Constitution.

Probable cause to arrest means that the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Humbert v. Mayor & City Council of Baltimore*, 866 F.3d 546, 555-56 (4th Cir. 2017). In addition, "[a] warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411 (1976)). In Maryland, a person is prohibited from driving, or attempting to drive, any vehicle while under the influence of alcohol. Md. Code Ann., Transp. § 21-902(a)(1)(i)-(ii). The Maryland Legislature has defined being "[u]nder the influence of alcohol per se" as "having an alcohol concentration at the time of testing of 0.08 or more[.]" Md. Code Ann., Transp. § 11-174.1(a). In addition, the Supreme Court has articulated its precedent that, where law enforcement officials have a mistaken belief that probable cause is present, they should not be held personally liable. *Anderson*, 483 U.S. at 641.

In this case, Plaintiff contends that at the time of her arrest she did not exhibit any signs of being under the influence of alcohol. (ECF No. 16, ¶ 12). She also denies causing a car accident. (ECF No. 131-2, p. 30). Defendants argue, however, that Plaintiff "smelled strongly of alcohol and admitted to drinking, and that a preliminary breath test revealed that Plaintiff's blood alcohol content was 0.16." (ECF No. 125-1, pp. 2-3). Viewing the facts in the light most favorable to

14

Plaintiff, material factual disputes remain regarding whether Plaintiff was intoxicated and whether Okafor had probable cause to arrest.

In addition, Defendant Okafor asserts that he is entitled to qualified immunity. Relying on the Supreme Court's decision in *Anderson*, Okafor avers that even if he mistakenly concluded that probable cause existed he is still covered by qualified immunity. 483 U.S. at 641. Although Okafor is correct, as stated above, the issue of whether probable cause did exist to arrest Plaintiff or Okafor mistakenly believed probable cause was present are questions best left for the jury to decide. Accordingly, summary judgment is denied.

## V. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED**.


Dated: July 23, 2019 　　　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　　　　　　　　　The Honorable Gina L. Simms
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge